[Cite as *Bank of New York Mellon Trust Co. N.A. v. Herres*, 2014-Ohio-1539.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

BANK OF NEW YORK MELLON TRUST CO. N.A.

     Plaintiff-Appellee

v.

MARK HERRES, et al.

     Defendant-Appellant

Appellate Case No.    25890

Trial Court Case No.   2008-CV-1268

(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of April, 2014.

. . . . . . . . . . .

JAMES S. WERTHEIM, Atty. Reg. No. 0029464, KIMBERLY Y. SMITH-RIVERA, Atty. Reg. No. 0066849, 25550 Chagrin Boulevard, Suite 406, Cleveland, Ohio 44122
     Attorneys for Plaintiff-Appellee

JOSEPH C. LUCAS, Atty. Reg. No. 0081336, TYLER W. KAHLER, Atty. Reg. No. 0085932, P.O. Box 36736, Canton, Ohio 44735
     Attorneys for Defendant-Appellant

ALAN M. KAPPERS, Atty. Reg. No. 7430, 210 West Main Street, Troy, Ohio 45373
     Attorney for Defendant-Appellee-Mainsource Bank Ohio

DOUGLAS M. TROUT, Atty. Reg. No. 72027, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
     Attorney for Defendant-Appellee-Montgomery County Treasurer

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-Appellant, Mark Herres, appeals from a decision overruling his motion for relief from judgment and granting a motion to strike filed by Plaintiff-Appellee, Bank of New York Mellon Trust Company, N.A., as Grantor Trustee of the Protium Master Grantor Trust ("Mellon").   Herres contends that the trial court erred when it concluded that the original plaintiff, Sutton Funding, LLC ("Sutton") had standing to bring this foreclosure action.   Herres also contends that the trial court abused its discretion in denying relief under Civ.R. 60(B)(4), when Herres's debt had been discharged in bankruptcy.

{¶ 2}    We conclude that Sutton had standing to bring the foreclosure action, because the original holder of the promissory note assigned it to Sutton prior to the time that the foreclosure action was filed.   Furthermore, the lack of formal assignment of the mortgage to Sutton prior to suit did not preclude standing, because the transfer of the note automatically resulted in the equitable assignment of the mortgage securing the note.

{¶ 3}    We further conclude that the trial court did not abuse its discretion in denying Herres's Civ.R. 60(B) motion for relief from judgment.   Herres's discharge from personal liability for the debt in bankruptcy did not affect Mellon's judgment in foreclosure and attendant right to sell the property.   Instead, the discharge merely precluded Mellon from pursuing Herres personally on any deficiency judgment resulting from the sale.   Accordingly, the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

**{¶ 4}** On February 5, 2008, Sutton filed a foreclosure action against Herres and various other defendants, alleging that Sutton held a promissory note upon which Herres had defaulted. The complaint further alleged that Sutton held a mortgage that Herres had given to secure payment of the note. Based on Herres's default of payments under the note, Sutton asked the trial court to enter judgment in the amount of $250,123.42, plus interest at a rate of 9.5% per year from October 1, 2007. Sutton also asked the court to foreclose the mortgage, and to order the sale of the property securing the mortgage.

**{¶ 5}** The promissory note was made payable to EquiFirst Corporation ("EquiFirst"), and acknowledged that EquiFirst, as the note holder, could transfer the note. The Note further stated that: "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.' " Complaint, Exhibit A, p. 1. The note also referred to the mortgage, dated the same day as the note, which was intended to protect the note holder from losses that might result if the person signing the note failed to keep the promises in the note. *Id.* at p. 4. The note attached to the complaint did not contain any endorsements or alonges.

**{¶ 6}** Also attached to the complaint was "Exhibit B," which is a copy of a mortgage agreement, pursuant to which Herres granted a security interest in property located at 300 Pauly Drive, Clayton, Ohio, to Mortgage Electronic Systems Registration (MERS), as nominee for EquiFirst and EquiFirst's successors and assigns. The mortgage agreement referred to the promissory note that Herres had signed in favor of EquiFirst, and to the amount of the note.

**{¶ 7}** In May 2008, Herres filed an answer, asserting lack of service, and a counterclaim. However, the trial court dismissed the counterclaim in December 2008.

Subsequently, in May 2009, Sutton filed a motion for summary judgment, supported by the affidavit of Jill Orrison, a litigation management liaison with HomEq Servicing, the authorized mortgage loan servicer for Sutton. Orrison authenticated copies of the note and mortgage, and stated that Sutton had acquired the note and mortgage loan from EquiFirst. In particular, the affidavit stated that:

> Plaintiff Sutton Funding LLC acquired the Note and Mortgage Loan from EquiFirst Corporation on or about October 27, 2007 – prior to the filing of this foreclosure – and the Note has been endorsed over to Plaintiff Sutton Funding, LLC via an allonge to promissory note. Affidavit in Support of Summary Judgment, Doc.#107, ¶ 3, p. 2.

{¶ 8} The allonge attached to the note was dated October 27, 2007, had been signed by a vice president for EquiFirst Corporation, and transferred EquiFirst's rights under the note to Sutton. Doc.# 107, Ex. B., p. 5. However, MERS did not formally transfer the mortgage to Sutton until February 12, 2008, or approximately one week after the foreclosure action against Herres was filed. See Doc.# 107, Ex. D., p. 2. The assignment of mortgage was recorded with the Montgomery County Recorder on February 27, 2008.

{¶ 9} In the note, Herres agreed to make payments of $2,108.45 per month, beginning on June 1, 2007. Herres failed, however, to make payments on the note after October 1, 2007, and had defaulted on the note.

{¶ 10} In responding to summary judgment, Herres did not deny that he had failed to pay the loan; his "defense" was that he was uncertain about where the payments should be made (despite the statement in the note indicating the address where payments should be made).

Herres also argued that Sutton failed to provide him with proof that the mortgage had been assigned to someone other than EquiFirst, despite his threat not to pay the mortgage unless he received such notice.

{¶ 11} In July 2009, the trial court granted Sutton's motion for summary judgment. The court rejected Herres's arguments and concluded that there were no factual disputes about his liability on the note and mortgage. Herres then appealed from the court's decision. While the case was on appeal, Herres filed a motion to vacate a proposed sheriff's sale. In the motion, Herres argued that Sutton was no longer the owner of the mortgage, and that the mortgage had been transferred to Mellon. In December 2009, the trial court indicated that it would defer ruling on the motion, because the appeal had deprived it of jurisdiction to consider the motion.

{¶ 12} In August 2010, we issued a decision affirming the judgment and decree of foreclosure. See *Sutton Funding, LLC v. Herres*, 188 Ohio App.3d 686, 2010-Ohio-3645, 936 N.E.2d 574 (2d Dist.). We concluded that the trial court had properly dismissed Sutton's counterclaim, and that summary judgment had been properly granted on the foreclosure claim, based on the lack of genuine issues of material fact. *Id.* at ¶ 54 and 66. We also discussed Herres's supplemental assignment of error, which alleged that the foreclosure action should be dismissed because Sutton no longer owned the note and mortgage. *Id.* at ¶ 34. In this regard, we noted that:

> Although it is unclear when Herres became aware of the "involvement" of
> Bank of New York Mellon, he knew of changes since he originally borrowed from
> EquiFirst, and he failed to assert a real-party-in-interest defense prior to the entry
> of the trial court's judgment and decree of foreclosure. Accordingly, he waived

any challenge to Sutton Funding's standing for purposes of this appeal. Moreover, Civ.R. 25(C) permits Sutton Funding to continue its action against Herres, even assuming that its interest has now been transferred. We will permit Sutton Funding to defend its judgment in this appeal.

Whether Sutton Funding was, in fact, the real party in interest when it filed its complaint is a matter that the trial court may address in ruling on Herres's Civ.R. 60(B) motion, which remains pending before the trial court. Further, we leave to the trial court to determine whether Bank of New York Mellon (or whichever entity holds the note and mortgage at this time) should be substituted for Sutton Funding upon further proceedings in that court. *Id.* at ¶ 41- 42.

**{¶ 13}** Herres did not appeal from our decision, and the judgment became final. Subsequently, the trial court considered Herres's motion to vacate. In November 2010, the trial court overruled branches one and two of the motion. Branch one challenged Sutton's ability to proceed since Sutton currently did not own the note and mortgage, and branch two asked for sanctions against Sutton's attorneys. The trial court concluded that Sutton could proceed pursuant to Civ.R. 25(C), and also found that Sutton's attorneys had not acted inappropriately.

**{¶ 14}** The third branch of the motion challenged Sutton's status as a real party in interest due to the transfer of its interest to Mellon, and asked for relief under Civ.R. 60(B)(3),(4), and (5). Because this branch involved a request for relief under Civ.R. 60(B), the trial court indicated that it would set the matter for a hearing.

**{¶ 15}** The Civ.R. 60(B) hearing was continued several times, at the request of the parties. In the interim, Sutton asked that Mellon, the current holder of the note and mortgage, be

added as a party, and the trial court agreed to do so.

{¶ 16} During 2011, 2012, and 2013, Mellon attempted to schedule sales of the property, which Herres thwarted by filing various petitions for bankruptcy. The last bankruptcy petition was filed in January 2013, resulting in cancellation of a sheriff's sale set for January 18, 2013. The trial court then dismissed the case other than on the merits and without prejudice. The court stated in the entry that the case could be reactivated upon Mellon's motion for good cause shown, and that reactivation would be retroactive to the original filing date and without additional costs. See Order of Dismissal, Doc.# 90, filed on January 18, 2013.

{¶ 17} In June 2013, Herres filed a document in the trial court that was labeled "Memorandum in Support of the Stayed Motion filed December 3, 2009." In this document, Herres argued for the first time that Sutton was not the real party in interest when the complaint was filed, because Sutton did not have an interest in the mortgage when it filed suit. Herres also argued that the note had been discharged in bankruptcy, and that he must be relieved from the judgment in the foreclosure case, based on the application of res judicata and Civ.R. 60(B).

{¶ 18} Mellon moved to strike this memorandum, based on the fact that it had been filed without leave of court. The trial court granted the motion to strike, and then considered the grounds raised in Herres's original motion to vacate that had been filed in December 2009. The trial court concluded that Herres had failed to show grounds for relief under Civ.R. 60(B)(3), (4), or (5). However, the court also mentioned in passing that Sutton had standing to bring the action when the complaint was filed. *See* Decision, Order and Entry Overruling Defendant's Motion for Relief From Judgment (Branch Three), Filed on December 3, 2009; Granting Plaintiff's Motion to Strike, Doc.# 99, filed on August 1, 2013, p. 5, fn. 4; p. 6, fn. 6; and p. 7, fn. 7. In

these footnotes, the trial court cited *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214.

**{¶ 19}** Herres appeals from the decision overruling his motion for relief from judgment.

## II. Did the Trial Court Err in Concluding that Sutton Had Standing to Bring the Foreclosure Action?

**{¶ 20}** Herres's First Assignment of Error states that:

The Trial Court Erred Where It Concluded that the Original Plaintiff, Sutton Funding, LLC [,] Had Standing to Bring the Action.

**{¶ 21}** Under this assignment of error, Herres contends that the trial court lacked jurisdiction over the foreclosure action because Sutton did not acquire the mortgage until after the complaint was filed. In particular, Herres relies on the decision of the Supreme Court of Ohio in *Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214. Herres claims that *Schwartzwald* is extremely similar to the case before us.

**{¶ 22}** In contrast, Mellon argues that Sutton did have standing to pursue the action because the note was transferred to Sutton prior to filing, and transfer of a note carries equitable ownership of the mortgage. In addition, Mellon contends that *Schwartzwald* only requires that a plaintiff have an interest in either the note or mortgage at the time the complaint is filed.

**{¶ 23}** In *Schwartzwald,* the Supreme Court of Ohio held that standing is a jurisdictional prerequisite before common pleas courts can proceed with foreclosure actions. *Id.* at ¶ 22-28. Generally, we review issues of subject-matter jurisdiction de novo. *See, e.g.*, *Yu v. Zhang*, 175 Ohio App.3d 83, 2008-Ohio-400, 885 N.E.2d 278, ¶ 16 (2d Dist.).

**{¶ 24}** "In order to have standing to bring a foreclosure case, the plaintiff must demonstrate that it has an interest in either the promissory note or mortgage." *Fed. Home Loan Mtge. Corp. v. Koch*, 11th Dist. Geauga No. 2012-G-3084, 2013-Ohio-4423, ¶ 24, citing *Fed. Home Loan Mort. Corp. v. Rufo*, 11th Dist. Ashtabula No.2012-A-0011, 2012-Ohio-5930, ¶ 18. *But see BAC Home Loan Serv. v. McFerren*, 9th Dist. Summit No. 26384, 2013-Ohio-3228, ___ N.E.2d ___, ¶ 13 (holding "that *Schwartzwald* did not overturn long-standing property and foreclosure principles and, therefore, [the plaintiff] had to be holder of the Note and the Mortgage at the time it initiated this action order to have standing").[1]  However, once a foreclosure ruling is issued, and the defendant is forced to challenge standing in a post-judgment motion to vacate, the burden of proof switches to the defendant as the moving party. *Koch* at ¶ 32.

**{¶ 25}** "The requirement of an 'interest' can be met by showing an assignment of either the note or mortgage." *Koch* at ¶ 24, citing *Rufo* at ¶ 44.  *But see McFerren* at ¶ 13 (requiring a showing of an interest in both the note and mortgage).  "In addition, this interest must have existed at the time the foreclosure complaint was filed; there can be no standing to proceed if the interest is acquired when the action is already pending." *Koch* at ¶ 24, citing *Schwartzwald* at ¶ 25–27.

**{¶ 26}** We need not resolve the conflict regarding whether an interest in both the note

---

[1]  A majority of districts considering this issue, including the Twelfth, "Eighth, Eleventh, Tenth, Seventh, and Sixth Districts have found that the plain language of *Schwartzwald* only requires a plaintiff to establish an interest in the note *or* mortgage at the time the suit is filed."  (Emphasis sic.)  *SRMOF 2009-1 Trust v. Lewis*, 12th Dist. Butler Nos. CA2012-11-239, CA2013-05-068, 2014-Ohio-71, ¶ 16, citing *Bank of New York Mellon v. Burke*, 12th Dist. Butler No. CA2012-12-245, 2013-Ohio-2860, ¶ 13; *CitiMortgage, Inc. v. Patterson*, 8th Dist. Cuyahoga No. 98360, 2012-Ohio-5894, ¶ 21; *Koch*, 11th Dist. Geauga No.2012-G-3084, 2013-Ohio-4423, at ¶ 24; *U.S. Bank Natl. Assn. v. Gray*, 10th Dist. Franklin No. 12AP-953, 2013-Ohio-3340, ¶ 27; *CitiMortgage, Inc. v. Loncar*, 7th Dist. Mahoning No. 11 MA 174, 2013-Ohio-2959, ¶ 15; and *Bank of New York Mellon v. Matthews*, 6th Dist. Fulton No. F-12-008, 2013-Ohio-1707, ¶ 11.

and mortgage is required, because Sutton had standing to prosecute the action even if an interest in both is required. As an initial matter, we note that Sutton presented evidence in the trial court that Equifirst assigned the note to Sutton on October 27, 2007, prior to the time that the foreclosure action was filed.

{¶ 27} Herres argues in his brief that the note may not actually have been assigned before the complaint was filed, because the note attached to Sutton's complaint did not contain an allonge. Herres places emphasis on the fact that an allonge was attached to the note when Sutton later filed its motion for summary judgment. From this, Herres reasons that the allonge must not have been in existence at the time the complaint was filed, or Sutton would have attached it.

{¶ 28} We attach no significance to these points, because Herres failed to submit any evidence to support this supposition. Notably, the foreclosure action was pending for more than five years before the trial court overruled Herres's motion for relief from judgment. During that time, Herres had ample opportunity to conduct discovery and uncover evidence to support his allegations. Herres failed to file any evidence, either in response to summary judgment, or in support of the motion for relief from judgment, which would challenge the documents and affidavit that Sutton filed. These documents established Sutton's ownership of the note before suit was initially filed.

{¶ 29} Furthermore, the failure of the mortgage to be formally assigned prior to suit does not preclude standing. We have previously held that formal assignment of the mortgage is not required, because a "mortgage automatically follows the note it secures." (Citations omitted.) *PHH Mtge. Corp. v. Unknown Heirs,* 2d Dist. Montgomery No. 25617,

2013-Ohio-4614, ¶ 7.  Thus, "the transfer of a note automatically results in equitable assignment of a mortgage securing the note."  (Citation omitted.)  *Id*.

**{¶ 30}**  In this vein, we recently observed that:

Even if we assume, arguendo, that there was some irregularity in the assignment of the mortgage, Wells Fargo indisputably held the note secured by the mortgage when it filed its complaint.  That being so, Wells Fargo was not even required to have the mortgage formally assigned to it.  Ohio courts have recognized that the mortgage automatically follows the note it secures. *See, e.g., Bank of New York Mellon v. Loudermilk*, 5th Dist. Fairfield No. 2012-CA-30, 2013-Ohio-2296, ¶ 43 (citing cases); *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 65 ("Even if the assignment of mortgage from Argent to Deutsche Bank was invalid, Deutsche Bank would still be entitled to enforce the mortgage because under Ohio law, the mortgage 'follows the note' it secures. * * * The physical transfer of the note endorsed in blank, which the mortgage secures, constitutes an equitable assignment of the mortgage, regardless of whether the mortgage is actually (or validly) assigned or delivered."); *U.S. Bank Natl. Assn. v. Gray*, 10th Dist. Franklin No. 12AP-953, 2013-Ohio-3340, ¶ 31-34 (recognizing that the transfer of a note automatically results in equitable assignment of a mortgage securing the note).

Nothing in *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, is contrary to our analysis herein. In *Schwartzwald*, the plaintiff commenced a foreclosure action before obtaining an

assignment of a promissory note and mortgage. Under these circumstances, the Ohio Supreme Court held that the plaintiff lacked standing to file a foreclosure action. The *Schwartzwald* court further held that the lack of standing could not be cured by the plaintiff obtaining an assignment after commencing the action. Unlike *Schwartzwald*, Wells Fargo obtained the promissory note and an actual or equitable assignment of the mortgage before filing its foreclosure action. Therefore, Wells Fargo had standing to file the present action.

*Wells Fargo Bank, N.A. v. Goebel*, 2d Dist. Montgomery No. 25745, 2014-Ohio-472, ___ N.E.3d ___, ¶ 12-13.

{¶ 31} Applying the same reasoning here, we conclude that Sutton had standing when it filed the complaint against Herres, and that the trial court, therefore, had jurisdiction over the foreclosure action. Accordingly, Herres's First Assignment of Error is overruled.

### III. Did the Trial Court Abuse its Discretion in Denying Herres's Civ.R. 60(B) Motion?

{¶ 32} Herres's Second Assignment of Error states as follows:

The Trial Court Abused Its Discretion in Denying the Relief Requested Pursuant to Civ.R. 60(B) Where the Underlying Debt Had Been Completely Discharged in Bankruptcy.

{¶ 33} Under this assignment of error, Herres contends that the trial court erred in denying his request for relief under Civ.R. 60(B), because the underlying debt on the note was discharged in bankruptcy. In response, Mellon initially notes that this issue is not properly

before us because the trial court granted Mellon's motion to strike Herres's supplemental memorandum, and considered only the third branch of Herres's original motion to vacate. The issue raised in the third branch was that prospective application of the final judgment would be inequitable because Sutton had subsequently transferred its interest in the note and mortgage to Mellon. This is the issue that we mentioned in our appellate decision, and indicated that the trial court could address it when the court resolved the pending Civ.R. 60(B) motion. *Sutton Funding, LLC*, 188 Ohio App.3d 686, 2010-Ohio-3645, 936 N.E.2d 574 (2d Dist.), at ¶ 33-42.

{¶ 34} Mellon's second point is that even if Civ.R. 60(B) applies to bankruptcy discharges, a bankruptcy discharge does not extinguish a debt. Instead, the discharge simply prevents a creditor from holding the debtor personally liable for the debt.

{¶ 35} As a preliminary matter, we agree with Mellon that the trial court did not consider the issue of the bankruptcy discharge. The trial court struck Herres's June 2013 memorandum, and considered only the points raised in the original motion to vacate. Therefore, the appropriate assignment of error would have been whether the trial court erred in granting the motion to strike. The standard of review in this situation is whether the trial court abused its discretion. *See, e.g., KeyBank Natl. Assn. v. Southwest Greens of Ohio, L.L.C.*, 2013-Ohio-1243, 988 N.E.2d 32, ¶ 68 (10th Dist.), citing *Douglass v. Salem Community Hosp.*, 153 Ohio App.3d 350, 2003-Ohio-4006, 794 N.E.2d 107, ¶ 20 (7th Dist.). (Other citation omitted.)

{¶ 36} An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " (Citation omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "[A]n abuse of discretion most commonly arises from a decision

that was unreasonable." (Citations omitted.) *Wilson v. Lee*, 172 Ohio App.3d 791, 2007-Ohio-4542, 876 N.E.2d 1312, ¶ 11 (2d Dist.). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 37}  On appeal, Herres does not specifically challenge the trial court's decision to grant the motion to strike. Instead, Herres argues that the court should have granted his Civ.R. 60(B) motion for relief from judgment. However, even if we assume for purposes of argument that the trial court abused its discretion in granting the motion to strike, we could not also conclude that the trial court erred in denying the motion for relief from judgment.

{¶ 38}  Civ.R. 60(B) provides, in pertinent part, that:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application * * * .

{¶ 39}  "To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d

113 (1976), paragraph two of the syllabus.

{¶ 40}   "A motion for relief from judgment under Civ.R. 60(B) is addressed to the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of abuse of discretion."   *Griffey v. Rajan*, 33 Ohio St.3d 75, 77, 514 N.E.2d 1122 (1987).   Based on these standards, the trial court did not abuse its discretion in overruling Herres's motion for relief from judgment.

{¶ 41}   As an initial matter, we note that the judgment and decree of foreclosure became final after Herres failed to appeal the decision we issued in August 2010.   See *Sutton Funding, LLC*, 188 Ohio App.3d 686, 2010-Ohio-3645, 936 N.E.2d 574 (2d Dist.).   Based on this final judgment, Sutton, and its successor, Mellon, were entitled to have the property sold at auction, and to hold Herres personally liable for any deficiency between the amount of the judgment and the proceeds of the sale.   The fact that Herres was discharged from personal liability for the debt in bankruptcy did not affect Mellon's judgment in foreclosure and its attendant right to sell the property.

{¶ 42}   In a prior case, we explained the operation of a debtor's bankruptcy filing and discharge as follows:

> McLoughlin [the debtor] misconstrues the effect of a bankruptcy discharge of a debt.   When a person receives a discharge in bankruptcy, generally that discharge acts as a discharge, or a release, of all personal liability of the debtor who filed bankruptcy, with respect to debts that existed prior to the filing of the bankruptcy petition.   11 U.S.C. § 524(a).   Therefore, no creditor can pursue the bankruptcy debtor for a money judgment on any debt that was listed in the

bankruptcy petition or where the creditor had actual knowledge of the bankruptcy and had an opportunity to object to the discharge of the debt.

However, the discharge only acts as an injunction against enforcing the personal obligation of the debtor - it does not affect a security interest that a debtor has voluntarily given in property to secure the payment of a debt. During the bankruptcy proceedings, a creditor can move for relief from stay in order to pursue property that is security for a debt. 11 U.S.C. § 362(d). Once the property has been released from the bankruptcy estate, either through granting a motion for relief from stay to a creditor, or through abandoning the property to the debtor during the pendency of the case or by a general order at the close of the case, 11 U.S.C. § 554, a creditor is free to foreclose on any security interest in any property owned by the debtor that is subject to the security interest. *First Fed. Sav. & Loan Assn. v. McLoughlin*, 2d Dist. Montgomery No. 2889, 1992 WL 164010, *2 -3 (July 15, 1992), *appeal dismissed for want of prosecution*, 66 Ohio St.3d 1409, 607 N.E.2d 9 (1993).

{¶ 43} Consequently, Herres was only discharged from personal liability on the note and any deficiency judgment; this discharge had no effect on the underlying foreclosure, other than to prevent Mellon from pursing Herres personally for any deficiency.

{¶ 44} We also note that the judgment against Herres is not listed in the bankruptcy documents that Herres submitted to the trial court. Instead, the documents list only the property at 300 Pauly Drive, and the mortgage of Sutton and Mellon on Herres's residential real estate. Mellon also presented documents to the trial court indicating that it had obtained an order

granting relief from the bankruptcy stay with respect to the property located at 300 Pauly Drive. See Order Granting Relief from Stay, attached to Substitute Plaintiff's Motion to Strike, or in the Alternative, Reply to Defendant's Memorandum in Support of the Stayed Motion Filed December 3, 2009, Doc. # 96, filed on July 2, 2013.

{¶ 45} Accordingly, the trial court did not err in overruling the motion for relief from judgment. Herres failed to establish that the foreclosure judgment had been discharged, or that he had a meritorious defense to present. Therefore, Herres's Second Assignment of Error is without merit and is overruled.

## IV. Conclusion

{¶ 46} All of Herres's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.
DONOVAN, J., concurs in judgment only.

Copies mailed to:

James S. Wertheim
Kimberly Y. Smith-Rivera
Joseph C. Lucas
Tyler W. Kahler
Alan M. Kappers

Douglas M. Trout
Hon. Timothy N. O'Connell