[Cite as *PNC Bank, N.A. v. O'Malley*, 2014-Ohio-2450.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| PNC BANK, N.A. | : | |
| | : | Appellate Case No. 25931 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No.  11-CV-7104 |
| v. | : | |
| | : | |
| TERESA L. O'MALLEY, et al. | : | (Civil Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

# **O P I N I O N**

Rendered on the 6th day of June, 2014.

. . . . . . . . . .

ADAM R. FOGELMAN, Atty. Reg. No. 0073970, 120 East Fourth Street, 8ᵗʰ Floor, Cincinnati, Ohio 45202
     Attorney for Plaintiff-Appellee

GRACE M. DOBERDRUK, Atty. Reg. No. 0085547 and MARC E. DANN, Atty. Reg. No. 0039425 and DANIEL M. SOLAR, Atty. Reg. No. 0085632, 4600 Prospect Avenue, Cleveland, Ohio 44103
     Attorneys for Defendant-Appellant, Teresa O'Malley

DOUGLAS TROUT, Atty. Reg. No. 0072027, 301 W. Third Street, 5ᵗʰ Floor, Dayton, Ohio 45422
     Attorney for Montgomery County Treasurer

. . . . . . . . . .

FAIN, J.

{¶ 1}     Defendant-appellant Teresa O'Malley appeals from an order confirming a

foreclosure sale. O'Malley argues that the trial court's jurisdiction was never properly invoked, because the complaint filed by plaintiff-appellee PNC Bank, N.A., fails to establish that it has standing.

**{¶ 2}** We conclude that the complaint alleges sufficient facts to establish PNC Bank's standing. The complaint includes both allegations that O'Malley entered into a loan modification agreement with National City Mortgage Co., and that there were successions in interest from National City Mortgage Co., to National City Mortgage, Inc., to National City Real Estate Services LLC, to PNC Bank, the plaintiff. Accordingly, the order confirming the foreclosure sale is Affirmed.

## I.   The Essential Facts Alleged in the Complaint

**{¶ 3}** In its complaint, PNC alleges that it is the holder of a note and loan modification agreements, and that by "reason of default under the terms of the note, loan modification agreements and the mortgage securing same, plaintiff has declared the debt evidenced thereby said due; and there is due thereon from the defendant, Teresa O'Malley, $45,784.64, together with interest at the rate of 7.375% per year from July 1, 2009," as well as court costs and advances. PNC alleges that the note is secured by a mortgage which "constitutes a valid first lien upon the real estate," and further that:

> The mortgage was filed for record on March 26, 1992,

in Volume 92-0943, Page C07, of the county recorder's records and it was assigned to the plaintiff herein. The conditions of defeasance contained therein have been broken; plaintiff has complied with all conditions precedent; and plaintiff is entitled to have said mortgage foreclosed. A copy of said Assignment is attached hereto as Exhibit 'E'. PNC Bank, National Association is successor in interest to National City Real Estate Services LLC, as evidenced by the documents attached hereto as Exhibit 'F'. National City Real Estate Services LLC is successor by merger to National City Mortgage, Inc., as evidenced by the document attached hereto as Exhibit 'G'. National City Mortgage, Inc. is formerly known as National City Mortgage Co., as evidenced by the document attached hereto as Exhibit 'H'. National City Mortgage Co. is successor by merger to Integra Mortgage Co., as evidenced by the documents attached hereto as Exhibits 'I' and 'J'.

{¶ 4} Attached to the complaint as Exhibit A is a "Balloon Note," dated March 13, 1992, in the amount of $44,500.00, identifying Mayflower Mortgage, Inc., as the lender, Patrick A. O'Malley and Teresa O'Malley as borrowers, and 5923 Kevin Drive as the property at issue. There is an undated endorsement signed by Julie Davis, Assistant Vice President:

PAY TO THE ORDER OF

_____

WITHOUT RECOURSE

MAYFLOWER MORTGAGE, INC.

**{¶ 5}** There is also an endorsement, dated August 2, 1999, signed by Debra Conley, Assignment Specialist:

PAY TO THE ORDER OF

_____

WITHOUT RECOURSE

NATIONAL CITY MORTGAGE CO.

**{¶ 6}** Attached to the "Balloon Note" is a "Balloon Note Addendum."

**{¶ 7}** Attached to the Complaint as Exhibit B is a Mortgage Modification Agreement, dated April 9, 1999, signed by Patrick O'Malley and Teresa O'Malley as borrowers, and identifying National City Mortgage Co. as the lender. It includes the following provision:

> In return for a loan that I have received, I promise to pay U.S. $40,987.76 (this amount is called "principal"), plus interest, to the order of Lender. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**{¶ 8}** Attached to the Complaint as Exhibit C is a Loan Modification Agreement, dated August 1, 2004, identifying Teresa O'Malley as the borrower and National City Mortgage Co. as the lender. The Loan Modification Agreement provides that it "amends and supplements (1) the

Note (the 'Note') made by the Borrower and NATIONAL CITY MORTGAGE COMPANY, dated March 13, 1992, in the original principal sum of U.S. $44,500.00 and (2) the Mortgage, Deed of Trust, or Deed to Secure Debt (the Security Instrument), * * * ." The Loan Modification Agreement also provides: "The Security Instrument, which was entered into as security for the performance of the Note, encumbers the real and personal property described in the Security Instrument * * * which is located at 5923 Kevin Drive, Dayton OH 45432." The Loan Modification Agreement provides, "The Borrower and Lender agree that the provisions of this Modification supersede and replace any inconsistent provisions set forth in the Note and Security Instrument." The Loan Modification Agreement provides that $8,350.97 in accrued and unpaid interest has been "added to the indebtedness under the terms of the Note and Security Instrument. As of August 1, 2004, the amount including such amounts which have been added to the indebtedness (if any), payable under the Note and Security Instrument * * * is $45,834.94." Attached is a "Modification Due on Transfer Rider" and a "1-4 Family Modification Agreement Rider Assignment of Rents."

{¶ 9} Attached to the Complaint as Exhibit D is an "Open End Mortgage," dated March 13, 1992, identifying Patrick O'Malley and Teresa O'Malley as borrowers and Mayflower Mortgage, Inc. as the lender. It provides that "Borrower owes Lender the principal sum of Forty Four Thousand Five Hundred and 00/100 Dollars," and it identifies the Kevin Drive address. The mortgage bears a time stamp from the Montgomery County Recorder's Office of March 26, 1992.

{¶ 10} Exhibit E attached to PNC's complaint appears to be an assignment of mortgage by Mayflower Mortgage Company to Integra Mortgage Company, dated February 28, 1995,

although the document is barely legible.  We note that the Preliminary Judicial Report herein indicates, in an exception, as follows:

> Mortgage Assignment from Mayflower Mortgage, Inc., 208 West Monument Avenue, Dayton, Ohio 45402, to Integra Mortgage Company, its successors and/or assigns, Atima, 116 Allegheny Center Mall, Pittsburgh, Pennsylvania 15212, dated February 28, 1995, filed April 25, 1995 at 8:06 a.m., as Official Record Volume No. 95-1009, Page D05, in the Records of Montgomery County, Ohio.

**{¶ 11}**  Attached to the complaint as Exhibit F is a "Certificate," that provides in part:

> The undersigned, Janet L. Deringer, Assistant Secretary of PNC Bank, National Association, does hereby certify that the following is a true and correct copy of an excerpt from the By-Laws of PNC Bank, National Association and a true and correct copy of Resolutions adopted by the Board of Directors of PNC Bank, National Association on April 25, 2006 and that said excerpt and Resolutions are in full force and effect, and further that, <u>Michael D. Ferguson</u> is a duly appointed Vice President of PNC Bank, National Association.

**{¶ 12}**  The By-Laws and Resolutions provide that the Assistant Secretary of PNC has the "authority to affix and attest the corporate seal of the Bank." The certificate is dated November 9, 2009 and bears the seal of PNC.  Exhibit F also contains a "Certificate," dated November 6, 2009, bearing the PNC seal and signed by Janet Deringer, which provides:

> 1.  National City Bank was a wholly owned subsidiary of National City Corporation.

2. Effective December 31, 2008, National City Corporation merged into The PNC Financial Services Group, Inc. and National City Bank became a wholly owned subsidiary of The PNC Financial Services Group, Inc.

3. Effective as of November 6, 2009, National City Bank and pursuant to approval granted by the United States Office of the Comptroller of the Currency (as evidenced by the official certification dated November 6, 2009 attached hereto as Exhibit "A"), was merged with and into PNC Bank, National Association.

4. PNC Bank, National Association is a duly organized and existing national banking association * * * and wholly owned subsidiary of PNC Bancorp, Inc. (a wholly owned subsidiary of The PNC Financial Services Group, Inc.) * * *.

{¶ 13} "Exhibit A" to the "Certificate" is correspondence, dated November 6, 2009, from the office of the Comptroller of Currency, Licensing Division, to the Chief Regulatory Counsel of The PNC Financial Services Group, Inc., that provides, "This letter is the official certification of the Comptroller of the Currency to merge National City Bank, Cleveland, Ohio "(NCB"), with and into PNC Bank, National Association * * * . The resulting bank's title is PNC Bank, National Association, charter number 1316.

{¶ 14} Attached to the complaint as Exhibit G are documents from the office of the Ohio Secretary of State reflecting that National City Mortgage, Inc. merged into National City Real Estate Services LLC, effective January 1, 2007. Attached to the complaint as Exhibit H are documents from the office of the Ohio Secretary of State regarding the "amendment to articles" of National City Mortgage Inc., dated January 4, 2005, reflecting that National City

Mortgage, Inc., was formerly known as National City Mortgage Co. Attached to the complaint as Exhibit I is another "Certificate," dated December 14, 2010, and signed by Janet Deringer, which is repetitive of the "Certificate" quoted above in Exhibit F. Finally, attached to the complaint as Exhibit J is a "Certificate," dated December 15, 2010, and signed by Janet Deringer, which provides as follows:

\* \* \*

1. Effective May 3, 1996, Integra Financial Corporation was acquired by National City Corporation.

2. Effective December 31, 2008, National City Corporation merged with and into The PNC Financial Services Group, Inc.

**{¶ 15}** The trial court rendered a judgment of foreclosure. After sundry proceedings, including a stay occasioned by O'Malley's Chapter 13 bankruptcy proceeding, the trial court entered a Journal Entry Confirming Sale, Ordering Deed and Distributing Sale Proceeds, the order from which this appeal is taken.

## II. In its Complaint, PNC Bank Alleged Sufficient Facts
## to Set Forth its Standing to Bring this Foreclosure Action

**{¶ 16}** O'Malley's sole assignment of error is as follows[1]:

THE TRIAL COURT ERRED BY CONFIRMING THE SALE WHEN APPELLEE PNC LACKED STANDING.

**{¶ 17}** PNC asserts that "the judgment awarding default judgment in PNC's favor and

---

[1] Patrick O'Malley has not appealed.

Decree in Foreclosure was entered almost two years" before O'Malley filed her notice of appeal, that it is a final appealable order, and that "this Court lacks jurisdiction to hear this appeal because O'Malley did not file a notice of appeal within the 30 days allotted under Rule 4 of the Rules of Appellate Procedure." PNC asserts that an "order confirming a foreclosure sale is a final appealable order, and appellate court's review of the trial court's order of confirmation of sale is limited to whether a sale was conducted in accordance with R.C. 2329.01 through R.C. 2329.61." PNC asserts, once "a sale is confirmed, and proceeds from the sale are distributed, there is no controversy and an appellate court lacks the ability to afford relief to the parties."

{¶ 18}  If, under *Federal Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, a plaintiff's lack of standing at the time of filing of the complaint is fatal to the trial court's subject-matter jurisdiction, because the plaintiff is without standing to invoke the trial court's jurisdiction, then a foreclosure judgment previously entered would be not merely voidable, but void, and the foreclosure defendant could raise the standing issue, thereby collaterally attacking the foreclosure judgment, at any time. Because we find that PNC Bank did have standing when the complaint was filed, we need not determine whether a lack of standing at the time a complaint is filed renders the resulting judgment not merely voidable, but void.

{¶ 19}  O'Malley argues that the "trial court erred by confirming the sale when Appellee PNC filed a foreclosure complaint with a note originally payable to Mayflower Mortgage Inc., the assignment of mortgage was unreadable, the merger documents do not demonstrate that Appellee had an interest in the note or mortgage, and Appellee failed to invoke the subject matter jurisdiction of the court making both the judgment and sale *void ab initio."* O'Malley relies

upon *Schwartzwald* and *Wells Fargo Bank, NA v. Horn*, 9th Dist. Lorain No 12CA010230, 2013-Ohio-2374.

{¶ 20} We conclude that the complaint in this case was sufficient to set forth standing on the part of PNC to bring this action.

{¶ 21} PNC's complaint is captioned in part, "PNC Bank, National Association successor in interest to National City Real Estate Services LLC successor by merger to National City Mortgage, Inc., fka National City Mortgage Co. * * * ." Exhibit H to the complaint establishes that National City Mortgage, Inc. was formerly known as National City Mortgage Company, and Exhibit G establishes that National City Mortgage Inc. merged into National City Real Estate Services as PNC alleges.

{¶ 22} Exhibit F establishes that National City Bank, a wholly-owned subsidiary of National City Corporation, was merged into PNC Bank, NA. What is not expressly evident from the documents is that National City Real Estate Services, LLC was the mortgage arm of, and a wholly-owned subsidiary of, National City Bank.[2] When National City Bank was merged into PNC Bank, its various merchandising subsidiaries were or became part of the merged bank. Therefore National City's merger with PNC would have included the transfer of everything National City owned, including its wholly owned subsidiaries. Although Exhibit F does not

---

[2] Our record neither supports, nor refutes, that National City Real Estate Services was part of National City Bank. But in *National City Real Estate Services LLC* [NCRES] v. *Shields*, 11th Dist. Trumbull No. 2012-T-0076, 2013-Ohio-2839, an affidavit in support of summary judgment revealed: "NCMI [National City Mortgage Inc.] (loan originator) merged with and into National City Real Estate Services [NCRES] (a wholly owned subsidiary of National City Bank) effective January 1, 2007. NCMC (loan servicer) merged with and into National City Bank (NCB) effective October 1, 2008. NCB later merged with and into PNC on November 6, 2009. NCRES became a wholly-owned subsidiary of PNC at the time of the merger between NCB and PNC and then was dissolved as a corporate entity the next day." *Id.* at ¶ 23.

directly support PNC's allegation, in its complaint, that it is a successor in interest to National City Real Estate Services, LLC, it does not rebut or impeach that allegation either, since nothing in Exhibit F is inconsistent with the proposition that National City Real Estate Services was a subsidiary of National City Bank when it merged into PNC Bank, the plaintiff. Thus, Exhibit F does not contradict or undermine the allegation in PNC Bank's complaint that it is a successor in interest to National City Real Estate Services, LLC.

{¶ 23} Because the allegations in PNC Bank's complaint allege that it is a successor in interest to National City Mortgage Company, the original obligee under the loan and mortgage modification agreements executed by O'Malley, we conclude that PNC Bank sufficiently alleged standing to invoke the jurisdiction of the trial court. O'Malley's sole assignment of error is overruled.

### III. Conclusion

{¶ 24} O'Malley's sole assignment of error having been overruled, the order of confirmation of sale, from which this appeal is taken, is Affirmed.

. . . . . . . . . .

DONOVAN, J., concurs in judgment only.

HALL, J., concurring,

{¶ 25} I agree with the analysis and conclusions in the lead opinion.

{¶ 26} I write separately to emphasize that, in my view, the fact that plaintiff PNC Bank is the holder of the note is not at all in dispute. In addition to the allegation in the complaint that

PNC is the holder of the note, PNC also submitted a December 2, 2011 affidavit stating: "PNC Bank National Association is the holder of, and has the right to enforce, a certain promissory note * * *." The balance due is described in the affidavit. There is no evidence to the contrary. O'Malley failed to answer and a default judgment was entered. Civil Rule 55 governs default judgments. It applies the provisions of Civ.R. 8(D), which states: "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." Consequently, the fact that the plaintiff, PNC, is the holder of the note, entitled to enforce it and the mortgage securing the note,[3] has been admitted due to the lack of an answer and the default judgment. There was never a Civ. R. 60(B) motion filed to contest *any* facts alleged in the complaint. No contrary evidentiary material was presented. The first appearance by the appellant was through a motion to stay further execution of judgment and eviction, filed September 26, 2013, six days after an order of confirmation of sale (filed 9-20-13) and nearly two years after the judgment entry and foreclosure decree (filed 12-5-2011). In that motion to stay, the appellant *did not* raise the issues now raised on appeal concerning the unclear documentation of transfer of the original note and the inadequate documentation of the merger of PNC and National City. Rather, at that time the appellant attempted to argue that "('Fannie Mae') is the holder and party entitled to enforce the note at issue." (Defendant's Motion, etc., pg. 3). In support, attached to the motion was an internet printout purportedly from the Fannie Mae website reflecting that Fannie Mae is the

---

[3] In addition to the complaint's allegations that the note is secured by a mortgage, which is attached to the complaint as exhibit D and which was assigned to PNC, we previously have held that "the transfer of a note automatically results in equitable assignment of a mortgage securing the note." (Citation omitted) *PHH Mtge. Corp. v. Unknown Heirs*, 2d Dist. Montgomery No. 25617, 2013-Ohio-4614, ¶ 7.

"owner" of the loan. Obviously, PNC need not be the "owner" of the note to enforce it.[4] In addition, not only is the attachment not of evidentiary quality, but close inspection also reveals that it states: "Your mortgage company is PNC Bank, N.A." Thus, even the appellant's dubious attempt to produce some evidence in support of her position actually solidifies the default judgment and the undisputed facts it embodies.

{¶ 27} I also emphasize that because of the modification agreements directly between appellant and National City in 1999 (exhibit B) and 2004 (exhibit C), National City had standing to enforce the note and mortgage as of the execution of those agreements. The only remaining question is whether PNC acquired National City's interests. PNC alleged that it did. Those allegations are confirmed by the failure to answer. Averments in the complaint that are admitted by failure to answer do not become less established simply because some unnecessary attachments to the complaint may not precisely confirm the complaint's allegations. When a complaint is based on a note or mortgage, Civ.R. 10(D)(1) requires that the instruments be attached or their omission explained. When a plaintiff alleges it is the holder of an attached note, no further explanation is required. Here the appellant's challenge to the complaint, and thus to PNC's standing, is that surplus documents attached to the complaint do not entirely support the allegation that PNC Bank is a successor to National City Mortgage Company. The surplus attachments need not support the allegation as long as they do not expressly contradict it. Because the attachments are not inconsistent with the complaint's allegations, the allegations of the complaint that PNC is holder of the note, and was assigned the mortgage, are undisputed, leading to PNC's standing to pursue this action.

---

[4] *Nationstar Mtge, LLC v. West*, 2d Dist. Montgomery Nos. 25813, 25837, 2014-Ohio-735, ¶ 29-33.

. . . . . . . . . .

Copies mailed to:

Adam R. Fogelman
Grace M. Doberdruk
Marc E. Dann
Daniel M. Solar
Douglas Trout
Hon. Mary Katherine Huffman